IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 18 CR 286 |
| | ) | |
| XAVIER ELIZONDO | ) | |

**DEFENDANT'S MOTION TO SUPPRESS
TITLE III INTERCEPTED COMMUNICATIONS**

NOW COMES the defendant, Xavier Elizondo, by and through his attorney, Michael F. Clancy, pursuant to 18 U.S.C. §2518(10)(a), Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, and the Fourth Amendment to the Constitution of the United States, and respectfully moves this Court to enter an order suppressing the intercepted communications obtained through the Government's application under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III). In support of this motion, the defendant states as follows:

1. Title III sets forth a "detailed procedure" for the interception of wire, oral, or electronic communications. This detailed procedure is set out in §2518(1)-(5) of Title III. This authorization process essentially entails four steps before a wiretap order can be issued: (1) the wiretap application must be pre-approved by one of the statutorily identified high-level Justice Department officials. These officials include the Attorney General, the Deputy Attorney General, the Associate Attorney General,

1

and Assistant Attorney General, or any Acting Assistant Attorney General; (2) the Government must submit the application, under oath and affirmation, to a judge of competent jurisdiction and state the applicant's authority to make such an application. Specifically, the application must identify the "high-level Justice Department official" who approved the application; (3) Before issuing an *ex parte* wiretap order, as requested or modified, the judge must make certain determinations based on the information supplied by the applicant, namely, whether there is probable cause to believe that the phone to be tapped is or will soon be used in connection with particular enumerated criminal offenses; (4) the judge must issue an order approving the wiretap which limits its use for an interception period that is necessary to achieve the wiretap's objective with an initial maximum 30-day period that can only be renewed with new information to justify an extension.

2. Title 18 U.S.C. § 2518(1)(b) requires

> a full and complete statement of the facts and circumstances relied upon by the applicant to justify his belief that an order should be issued, including details as to the particular offense that has been, is being, or is about to be committed,

while § 2518(1)(c) provides that each application submitted to the district judge shall include:

2

    a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

 Finally, the statute requires that every order and extension shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception.

3. Because the Government failed to comply with Title III in obtaining the orders that authorized the wiretaps of Elizondo's cellular telephone, Title III and the Fourth Amendment bar the use in this case of intercepts obtained through those wiretaps and evidence derived therefrom.

4. The Supreme Court has long recognized that wiretapping is a particularly intrusive technique that raises special privacy concerns. Congress enacted Title III in 1968 in order to meet and exceed the restrictions on wiretapping that the Supreme Court, in two decisions the previous year, found the Fourth Amendment to require. *See Katz v. United States*, 389 U.S. 347, 354-57 (1967); *Berger v. New York*, 388 U.S. 41, 55-60 (1967). Title III effectuates what the Supreme Court has described as a "comprehensive scheme for the regulation of wiretapping and electronic surveillance." *Gelbard v. United States*, 408 U.S. 41, 46 (1972).

5. The Title III process includes various procedural and substantive restrictions, such as multiple levels of antecedent approvals, by which Congress sought to "guarantee that wiretapping… occurs only when there

3

is a genuine need for it and only to the extent that it is needed." *Dalia v. United States*, 441 U.S. 238, 250 (1979).  Strict compliance with the procedural safeguards embodied in Title III is essential.

6. To further assure that prosecutors and investigators will observe statutory and constitutional restrictions on wiretapping, Title III has its own exclusionary rule.  Where the Government intercepts a communication other than in the manner that Title III expressly authorizes, the statute provides that "no… such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court… of the United States." 18 U.S.C. § 2515.  Moreover, Title III authorizes any aggrieved person to move to suppress any communication that was intercepted unlawfully or in violation of the relevant wiretap order, and evidence derived from such communication.  18 U.S.C. § 2518(10)(a).  This statutory exclusionary rule is broader than the "judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights," and requires suppression whenever "there is a failure to satisfy any of [the] statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Giordano*, 416 U.S. 505, 524-27 (1974).

7. Title III reflects Congressional policy that "electronic surveillance cannot be justified unless other methods of investigation are not practicable," and therefore seeks to assure that "wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose crime." *United States v. Kahn*, 415 U.S. 153 n.12 (1974). Thus, the statute permits wiretaps to occur only upon a judicial finding – and not merely a determination by investigators and prosecutors – that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried." 18 U.S.C. § 2518(3)(c). Recognizing that it would be impossible for judges to make that determination in a meaningful fashion without candid disclosure of the relevant facts and circumstances, Title III also requires that all wiretap applications include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).

8. The wiretaps conducted in this case were unreasonable searches and seizures in violation of the Fourth Amendment, and must be suppressed.

**Not An Enumerated Offense**

Title 18, United States Code, Section 2516, allows the interception of wire or oral communications when such interception may provide evidence of various offenses. Those offenses are enumerated in 18 U.S.C. § 2516(1)(a)-(t). The charges

5

pending against Elizondo are not among the dozens of offenses listed for which interception is authorized. The application in this case purported an investigation into narcotics distribution, but, as evidenced by the investigative techniques employed (hiding money in various locations to see if it would be stolen by officers), was in fact focused on theft concerning programs receiving federal funds (18 U.S.C. § 666) and theft of money belonging to an agency of the United States (18 U.S.C. § 641), offenses which are not enumerated in 18 U.S.C. § 2516.

**Less Than Full Disclosure**

The court must examine the application to see if it contained material misstatements or omissions regarding the necessity for a wiretap. If the application for the order does not satisfy the necessity requirement when any misstatements are removed and any omissions are inserted, the court must order suppression.

The information provided to the issuing judge was lacking in a crucial respect. Foremost, the Government failed to disclose that Antwan Davis, whose information was relayed to CS-1 who then relayed it to investigating agents, had previously been investigated and apprehended by Xavier Elizondo while Elizondo was employed as an FBI Task Force Officer. As a result of that arrest, Davis was sentenced to 100 months in prison. While Paragraph 10(c) of the affidavit does indicate that Davis was convicted of conspiracy to distribute crack cocaine in February of 2010, it wholly omits that Xavier Elizondo was the individual who effectuated that arrest.

Section 2518(1)(b) requires a full and complete disclosure of the facts and circumstances of the investigation. Elizondo was the officer who brought Davis to the attention of federal agents years ago. As a result of Elizondo's work, Davis was convicted and sent to prison for more than eight years. Fast forward to the end of 2017 and beginning of 2018, and Davis is now providing information that the same man who brought Davis down years before is illegally providing him with drugs and money obtained during search warrants. Is that not the type of full and complete information that should be brought to the attention of a judge considering a Title III application? Clearly, Davis had motive, interest, and bias to impugn Elizondo. Yet the prior relationship between Elizondo and Davis was conveniently omitted from the affidavit.

Paragraph 17 of Special Agent Recca's Affidavit states that Davis told CS-1 that Davis first met the CPD officers with whom he was working when they recently searched Davis' home and did not find anything. However, the FBI knew that Davis had met Elizondo nearly a decade prior. Had a full disclosure been made of Elizondo's history with Davis, the issuing judge would have known that Davis' information regarding his introduction to the officers was inaccurate.

Notably, CS-1's hearsay statements from Davis comprised the bulk of the probable cause in this case. Judge Castillo needed accurate information to make a credibility determination, yet was kept in the dark on this important detail.

The affidavit also fails to mention that the investigative techniques used by Elizondo and called into question by the Government were actually taught to

Elizondo during his time as a federal task force officer. Deceiving sources of information to accomplish the objectives of an investigation was deemed perfectly acceptable by the agents who trained Elizondo. The Government notoriously pays its sources to provide information. The post hoc "do as we say, not as we do" that took place here, with nary a word about the genesis of the techniques utilized, is alarming.

**Employment of Other Investigative Techniques ("Necessity Requirement")**

Congress intended that wiretap surveillance not be routinely employed as an initial step in a criminal investigation. Rather, the applicant must state and the court must find that normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or be too dangerous. Thus, to obtain a wiretap, the Government must overcome this statutory presumption against such an intrusive investigative method by proving necessity. *Giordano*, 416 U.S. at 515.

According to 18 U.S.C. § 2518(1)(c), the Government may establish necessity for a wiretap by any of three alternative methods. The Government may show that traditional investigative procedures (1) have been tried and failed; (2) reasonably appear unlikely to succeed if tried; or (3) are too dangerous to try. A district court must reject a wiretap application if law enforcement officers have not first attempted, without success, traditional investigative methods that easily suggest themselves and are potentially productive and not unduly dangerous. Moreover, a wiretap application should be rejected if the agency cannot demonstrate that

8

normal investigative techniques would necessarily fail after a reasonable period of time.

In the instant case, the information provided in the affidavit supporting the application for orders authorizing the interception of telephone conversations fails to demonstrate why other investigative techniques would be less successful or too dangerous, or why a wiretap was necessary. Rather, the affidavit merely states the agent's conclusory opinions that while some investigative techniques had been used or tried, such techniques would not be sufficient to adequately expose the alleged criminal conduct. Without some basis for the agent's conclusion that other, less intrusive techniques were unlikely to succeed or too dangerous to attempt, the recording should be suppressed.

For example, concerning physical surveillance, agents averred that "the risk of detection was determined to be too high" and "highly unlikely to lead to evidence." Par. 61-62 of SA Recca's Affidavit in Support of Application. Similar conclusory statements are provided as to why the use of search warrants, confidential sources, undercover agents, pen registers, subject interviews, or grand jury subpoenas would be futile. In actuality, these other less-intrusive techniques were both available and potentially fruitful.

In this instance, the affidavit attached to the application established that normal investigative procedures worked quite well to accomplish every purpose lawfully open to investigative agents of the Government, short of a general warrant to conduct an unlimited exploratory investigation, which is prohibited by the Fourth

9

Amendment. Normal surveillance of Elizondo was possible and practicable, and could have easily been effected by traditional means. In fact, the Chicago Police Department's Internal Affairs Division routinely surveils its own officers. The suggestion that Elizondo's counter-surveillance training prevented physical surveillance here is dubious. The statements in the affidavit concerning the feasibility of other investigative methods were insufficient and highly suspect. As a result, the affidavit constituted an illegal imposition on the Court, and a misuse of official authority so grave as to totally invalidate any interception orders issued on the basis of false averments.

Boilerplate conclusions that merely describe inherent limitations of normal investigative procedures or that are based solely upon an agent's knowledge and experience rather than the facts of a specific case are insufficient to establish necessity. Since no wiretap can lawfully be ordered, consistent with the Fourth Amendment's limitations, against any particularly identified persons and places under circumstances where normal investigative techniques are feasible, Elizondo's constitutional rights were violated.

**Lack of Probable Cause**

Mere conclusions by the affiant are insufficient to justify a wiretap order. *Cf.*, *Aguilar v. Texas*, 378 U.S. 108 (1964) (reviewing search warrant affidavits). They do not provide facts from which a detached judge can determine whether other alternative investigative procedures exist as a viable alternative. Instead, the affidavit must contain an adequate factual history of the investigation and a

10

description of the criminal enterprise sufficient to enable the issuing court to determine in its own whether there is a requisite necessity for the use of a wiretap.

When probable cause rests on information provided by an informant, a totality of the circumstances analysis must be applied. *Illinois v. Gates*, 462 U.S. 213, 233 (1983). In conducting such an analysis pursuant to *Gates*, a court should consider the informant's veracity, reliability, and basis of knowledge, as well as whether independent police investigation corroborates the informant. It is clear, after conducting the requisite analysis, that the affidavit in support of the wiretap application in this case failed to establish probable cause.

The source of information here, CS-1, is a known felon, and thus inherently suspect. CS-1 provided hearsay information purportedly obtained from the seven-time felon Davis to the investigating agents. Combining one criminal with another to provide information of supposed criminal activity buy Chicago police officers only compounded the glaring deficit in trustworthiness.

Nonetheless, police officers are permitted to deceive criminals. There is no prohibition in the law against that. Elizondo's statements to both CS-1 and Davis, who were known criminals, must be viewed in context and not in a vacuum. This investigation revealed that Elizondo was interested in information that would allow him to get drugs and guns off of the street. When informants provided information to Elizondo, he acted on it. Those informants never received kickbacks from Elizondo. In fact, the initial sting operation at the apartment located at 1421 N Maplewood resulted in all of the "drug money" being inventoried by Elizondo and

11

his team. Instead of showing a course of criminal activity, that operation showed just the opposite. Every cent of the bait money was inventoried from that search. Although remuneration may have been discussed prior to the search on Maplewood, when push came to shove no payments took place.

Elizondo had no obligation to be truthful with either CS-1 or Davis. Recorded conversations discussing compensation that never occurred add little to the probable cause analysis. At the time this application was made, Elizondo had given CS-1 a grand total of nothing. Regardless of what Davis or CS-1 hoped for, the fact remains that no evidence was given to them by Elizondo.

Here, the affidavit is insufficient to allow a reasonable person to conclude that an offense had been or was being committed, such that surreptitious recording of private conversations was warranted. Accordingly, probable cause did not exist to issue the order authorizing the interception of those communications, and the recordings must be suppressed.

In light of the foregoing, Xavier Elizondo respectfully moves this Honorable Court to enter an order suppressing the communications unlawfully intercepted by the Government.

Respectfully submitted,

s/ Michael F. Clancy

MICHAEL F. CLANCY
53 W. Jackson Blvd., Suite 1401
Chicago, IL 60604
(312) 427-0288