UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>XAVIER ELIZONDO, aka "X," and<br>DAVID SALGADO | No. 18 CR 286<br><br><br><br>Judge Matthew F. Kennelly |

**GOVERNMENT'S CONSOLIDATED MOTIONS IN LIMINE**

The UNITED STATES OF AMERICA, through JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits its consolidated motions *in limine.*

**I.     EXCLUDE EVIDENCE OF NON-CORRUPT CONDUCT**

The government respectfully moves this Court to exclude all evidence of defendants' non-corrupt and/or "good acts" conduct, except for reputation or opinion evidence offered in accordance with limitations of Federal Rules of Evidence 404(a)(2)(A) and 405(a).

The defendants are charged with acts of police corruption that occurred between the summer of 2017 and early 2018. This period constitutes a small portion of both defendants' careers as police officers. In an effort to distract the jury from the charges for which they are standing trial, the defendants may try to elicit from government witnesses, or present through their own witnesses, testimony that on prior occasions (either during or outside the charged conspiracies), the defendants engaged in lawful police conduct or committed other good acts. Given the allegations

in this case, this might include evidence that on certain occasions either defendant obtained a J. Doe warrant based entirely on truthful information, or participated in a search without stealing or otherwise misappropriating recovered property, or wrote accurate police reports.

Defendants might seek to offer such evidence affirmatively, or in the form of questions on cross-examination, such as: (1) "Isn't it true that you have seen Officer Salgado properly inventory evidence on several occasions?"; (2) "Isn't it true that Sergeant Elizondo had a reputation for integrity within your unit?[1]"; (3) "Isn't it true that Officer Salgado has written many accurate police reports?" (4) "Isn't it true that you've heard Sergeant Elizondo instruct J. Doe affiants to provide truthful information to judges?" Defendants may also seek to introduce evidence about the positive impact of their police work generally, i.e. "Isn't it true that Sergeant Elizondo's unit was responsible for seizing [X number of] guns off the streets of Chicago in 2017 alone?"

Any evidence or argument of this sort is inadmissible and the Court should exclude it. The law is plain: a defendant may not seek to establish his innocence through proof of the absence of criminal acts on occasions not alleged in the indictment. *See United States v. Mandell*, 12 CR 842, 2014 WL 287520, at *3-4 (Jan. 27, 2014); *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012); *United States*

---

[1] Under Fed. R. Evid. 405(a), it would be permissible for a defendant to affirmatively offer pertinent reputation or opinion evidence through a character witness, but it is not proper to elicit reputational information on cross.

*v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990).

To the extent the defendants intend to offer evidence of their good character, they should be permitted to do so only in accordance with the limitations of Federal Rules of Evidence 404(a)(2)(A) and 405(a). Under these rules, a defendant may only offer evidence of a "pertinent" character trait. Fed. R. Evid. 404(a)(2)(A); *see also United States v. John,* 309 F.3d 298, 303 (5th Cir. 2002) ("In the criminal context, a pertinent character trait is one that is relevant to the offense charged."). Further, specific instances of conduct are not admissible to establish a pertinent character trait. Fed. R. Evid. 405.

**II.     PRECLUDE QUESTIONS AND COMMENTS THAT INVITE JUROR SPECULATION AS TO RECORDINGS, OR PORTIONS OF RECORDINGS, THE GOVERNMENT DOES NOT PLAY AT TRIAL**

As part of this investigation, the government conducted Title III interception of defendant Elizondo's cellphone and, through a cooperating source, made several consensual recordings. The government has provided all of these recordings to the defendants in discovery. The government will play only a small percentage of the total number of intercepted phone calls and consensual recordings obtained during the investigation. Further, with regard to the recordings that the government will play at trial, in several cases the government plans to play only limited portions of the recordings.

The defendants are of course free to seek to admit any recordings or portions of recordings that comport with the Federal Rules of Evidence. However, the Court

3

should bar the defendants from asking questions or making comments that invite juror speculation regarding the existence or content of recordings or portions of recordings not played at trial. Such comments or questions serve no legitimate purpose—they cause the jury to focus on evidence that is not in front of them, and wrongly suggest that the government is hiding the ball and withholding evidence favorable to the defense from the jury. *See generally Berry v. Deloney*, 28 F.3d 604, 609 (7th Cir. 1994) (holding that "district court acted within its discretion in precluding plaintiff's counsel from admitting evidence that would have merely invited the jury to speculate that [the defendant] suppressed evidence helpful to the plaintiff.").

### III. REQUIRE BOTH SIDES TO OBTAIN PRECLEARANCE WITH THE COURT BEFORE ATTEMPTING TO IMPEACH WITH SPECIFIC INSTANCE OF CONDUCT UNDER RULE 608(B)

The government moves the Court to require both sides to obtain permission from the Court (outside the presence of the jury) before attempting to impeach a witness with specific instances of conduct under Rule 608(b). Specifically, both sides should be required to show how the conduct is probative of truthfulness/untruthfulness, and, in certain circumstances explained below, the party's "good faith" basis to inquire into the conduct. This simple and efficient procedure will ensure that neither party improperly communicates to the jury any alleged prior bad acts before the Court has the opportunity to determine whether the alleged acts are fair game under Rule 608(b).

Fed. R. Evid. 608(b) provides, in pertinent part:

4

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . .

"Because the possibilities of abuse are substantial . . . the conduct must be sufficiently relevant to truthfulness before it can be the subject of cross-examination." *United States v. Abair*, 746 F.3d 260, 263 (7th Cir. 2014) (*quoting* Fed. R. Evid. 608(b) Advisory Committee Note for 1972). Questions asked pursuant to Rule 608(b) are subject to the "overriding protection" of Rule 403. *Id*; *see also United States v. Seymour,* 472 F.3d 969, 971 (7th Cir.2007) ("Rule 403 establishes the standard for the exercise of the judge's discretion in evidentiary matters which of course includes cross-examination" under Rule 608(b)).

Further, it is black letter law that a cross-examiner must have a "good faith basis" to believe that the witness actually engaged in the conduct that is relevant to his untruthfulness before attempting to impeach him with it. Rule 608(b) requires that a cross-examiner have a good faith basis to believe that the witness actually engaged in the conduct that is relevant to his untruthfulness before attempting to impeach him with it. *Abair*, 746 F.3d at 264; *citing United States v. Miles*, 207 F.3d 988, 994 (7th Cir. 2000) (affirming court's refusal to allow attorney to cross-examine government witness about failure to register firearm; conduct violated local ordinance but was irrelevant to truthfulness); *United States v. DeGeratto*, 876 F.2d 576, 584 (7th Cir. 1989) (questioning was improper under Rule 608(b) because government

5

lacked sufficient evidence "to permit a good faith belief" that [defendant] knowingly engaged in the alleged misconduct).

Certain facts of this case raise potential Rule 608(b) pitfalls, and weigh in favor of having the Court act as an *ex ante* filter:

### A. CPD Disciplinary Records

Several of the government's witnesses are CPD officers with multiple years of service. As the Court knows, the defendants are also likely to testify, and may call other CPD officers to testify in their defense. Some of the witnesses may have CPD disciplinary records ("Complaint Registers" or "CRs"), and both parties may seek to inquire into the underlying conduct on cross examination. Before either side attempts to impeach a testifying officer with conduct associated with a CPD disciplinary review, the offering party should have to show how the underlying conduct goes to truthfulness. Further, in cases where an associated CR was not sustained, the offering party should also have to explain to the Court their good faith basis to believe the conduct actually occurred.

### B. Arrests and Other "Bad Acts" Not Probative of Truthfulness

Several of the government's witnesses at trial have substantial criminal records. The defendants are free to impeach the government's witnesses with their criminal records within the parameters of Rule 609. The defendants should not be allowed, however, to impeach based on mere arrests that did not result in felony convictions (unless the circumstances surrounding the arrest are probative of untruthfulness), or with other specific instances of misconduct not probative of truthfulness.

6

A mere arrest that does not result in conviction is not an appropriate topic for Rule 608(b) inquiry. *See Nelson v. City of Chicago*, 810 F.3d 1061, 1068 (7th Cir. 2016) ("Unlike a criminal conviction, an *arrest* is not, in itself, probative of the arrested person's character for truthfulness"). Courts have construed Rule 608(b) to preclude cross-examination on prior arrests unless special facts surrounding the arrests bear on the witness's character for truthfulness. *Id* ("If the specific conduct underlying the arrest is probative of the witness's character for truthfulness, the conduct itself may be inquired into on cross-examination, subject to Rule 403 balancing for undue prejudice or some other ground for excluding the evidence."). *See also United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980). Accordingly, unless the defendants can demonstrate that the conduct underlying an arrest implicates a witness's character for truthfulness, the Court should preclude defendants from inquiring into the arrest or underlying conduct on cross-examination.

The Court should also preclude the defendants from inquiring into any specific misconduct that is not probative of untruthfulness. For example, several of the government's witnesses in this case have criminal convictions, including for narcotics possession, illegal firearms possession, assault, robbery, and narcotics distribution. While certain witnesses' felony convictions may be admissible under Rule 609(a) (discussed below), the underlying conduct associated with these convictions and other "bad acts" by the witnesses are not admissible unless probative of untruthfulness.

Possessing narcotics is not probative of untruthfulness. *United States v. Smith*, 181 F.Supp.2d 904, 909 (N.D. Ill. 2002). Illegal possession of a firearm,

7

standing alone, is not probative of untruthfulness. *See United States v. Trant*, 924 F.3d 83, 91 (7th Cir. 2019). Robbery is generally not probative of untruthfulness. *See United States v. Manske*, 186 F.3d 770, 775 (7th Cir. 1999). Acts probative of violence alone are not admissible under Rule 608(b). *See United States v. Manske*, 186 F.3d 770, 776 (7th Cir. 1999). As this Court noted in *Smith*, 181 F. Supp. 2d 904, several courts have held that under certain circumstances, narcotics distribution crimes—while not *crimen falsi*—may be probative of untruthfulness, but that requires a case-by-case determination. *Id.* at 909 (citing cases); *see also United States v. Vasquez*, 840 F. Supp. 2d. 564, 569-70 (E.D.N.Y. 2011).

The government understands the Court cannot make a broad Rule 608(b) ruling in a vacuum. The government simply seeks to flag for the Court potential Rule 608(b) issues that are likely to arise at trial, and demonstrate why, in light of these issues, it is appropriate for both sides to obtain preclearance before attempting to impeach with specific acts.

## IV. EXCLUDE FELONY CONVICTIONS OVER 10 YEARS OLD

A felony conviction over 10 years old is admissible to impeach a witness only if "its probative value substantially outweighs its prejudicial effect," and "the proponent gives an adverse party reasonable written notice."[2] Fed. R. Evid. 609(b). "The purpose of Rule 609 is to ensure that convictions over 10 years old will be admitted rarely and only in exceptional circumstances. *United States v. Rogers,* 542 F.3d 197,

---

[2] The government has not received written notice from the defense of their intent to impeach a government witness with a felony conviction older than 10 years. On the other hand, the defense has not yet seen the government's final witness list.

8

201 (7th Cir. 2008); *see also United States v. Fallon*, 348 F.3d 248, 254 (7th Cir. 2003); *United States v. Shapiro*, 565 F.2d 479, 481 (7th Cir. 1977)). The 10-year clock starts at the "witness's release from any physical confinement, or in the absence of confinement, the date of conviction," and it ends upon "the start of the trial at which the witness is testifying." *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008).

The government anticipates calling 5 witnesses with felony convictions subject to the limitations of Rule 609(b). The Court should preclude all of these convictions because none of them constitutes the "rare" or "exceptional circumstances" under which such convictions are properly admitted. *Rogers*, 542 F.3d at 201.

A. Witness 1

Witness 1 was the FBI confidential informant who set up the two undercover ruse search scenarios. At trial, Witness 1's testimony will consist mostly of explaining his/her role in the undercover operations (providing the ruse information to the defendants), and interpreting consensual recordings that s/he had with the defendants.

Witness 1 has the following felony convictions:

- March 2011: multiple counts of bank robbery;
- September 1992: drug distribution conspiracy (released from custody in November 2001).

The government does not object to the admission of Witness 1's March 2011 bank robbery convictions under Rule 609(a). The Court, however, should bar admission of his/her September 14, 1992 conviction for heroin distribution conspiracy because its probative value does not substantially outweigh the risk of prejudice.

9

Drug distribution is not a crime of dishonesty—a dishonest act or false statement is not an element of the crime. Nevertheless, as discussed above, several courts have held that under certain circumstances, drug distribution convictions may be probative of truthfulness. *Smith*. 181 F.Supp. 2d at 909.

Whatever minimal probative value witness 1's 1992 conspiracy conviction may have, however, is counterbalanced by its age—the conviction itself is over 27 years old, and witness 1 completed his/her custodial sentence on the conviction almost 18 years ago. Further, the defense will already be impeaching Witness 1 with his/her more recent bank robbery convictions. Piling on the dated drug conspiracy conviction would carry minimal—if any—additional marginal probative value, so it cannot possibly "substantially outweigh" the obvious prejudicial effect.

For these reasons, the Court should bar the admission of Witness 1's 1992 conviction for heroin distribution conspiracy.

B. <u>Witness 2</u>

Witness 2 was a J. Doe affiant for the defendants in late 2017, and introduced Witness 1 to the defendants in December 2017. Witness 2 will testify about his/her role in obtaining a materially false warrant at Elizondo and Salgado's direction on December 19, 2017 (after Witness 1 refused to appear before a judge), as well as his/her historical relationship with Elizondo and Salgado, which involved swearing out several materially false search warrants for Elizondo and Salgado in October 2017, and receiving narcotics and cash from Elizondo in exchange.

Witness 2 has the following felony convictions:

      i. June 2016: drug distribution;

      ii. December 2002: drug distribution (released from prison in May 2006);

      iii. March 2000: drug possession;

      iv. May 1997: drug possession;

      v. September 1996: drug distribution;

      vi. February 1996: drug possession;

      vii. May 1994: drug possession.

The government does not object to the admission of Witness 2's June 2016 drug distribution conviction under Rule 609(a). The Court should bar the defense from impeaching Witness 2 with any of his/her other felony convictions, however, because the probative value does not substantially outweigh the prejudicial effects.

First, none of Witness 2's felony convictions over 10 years of age constitutes a crime of dishonestly. Rather, most involve simple drug possession, which carries no probative value vis-à-vis truthfulness. *Smith*, 181 F.Supp.2d at 909. Whatever probative value the drug distribution convictions may have standing alone, here they are cumulative to the June 2016 drug distribution conviction and carry little if any additional marginal value. *See, e.g., United States v. Rucker*, 738 F.3d 878, 883-85 (7th Cir. 2013). Second, most of the convictions and custodial terms fall significantly outside the 10-year window—the convictions range from between 17 to over 25 years old, and Witness 2 was released from custody on the most recent of these convictions over 13 years ago.

11

For all of these reasons, Witness 2 does not present the "rare" and "exceptional" circumstances necessary to overcome Rule 609(b)'s balancing test. *Rogers*, 542 F.3d at 201.

C. <u>Witness 3</u>

Witness 3 served as a J. Doe affiant for the defendants. Witness 3 will offer testimony about at least two occasions during the charged conspiracies when Salgado directed him/her to provide false information to judges in support of J. Doe warrants. Witness 3's testimony will establish that Elizondo had knowledge of at least one of these instances. Specifically, Witness 3 will testify that s/he complained to Elizondo that Salgado was directing him/her to lie to judges, and Elizondo directed Witness 3 to do as Salgado told him/her. Witness 3 will offer additional testimony to establish that the defendants used a third-party fake J. Doe affiant to obtain a J. Doe search warrant in January 2018.

Witness 3 has the following felony convictions:

i. June 2013: counterfeiting;

ii. August 2012: disorderly conduct;

iii. March 2006: drug distribution;

iv. August 2005: drug distribution (released from custody on 7/24/2008);

v. March 2003: drug possession;

vi. July 2001: drug possession;

vii. July 2000: drug possession;

viii. November 1999: passing a forged check;

12

      ix.     July 1998: drug possession;

      x.     December 1995: drug distribution.

The government does not object to the admission of Witness 3's August 2012 and June 2013 felony convictions under Rule 609(a). However, the Court should bar the admission of Witness 3's other felony convictions because the probative value does not substantially outweigh the risk of prejudice.

Four of Witness 3's eight felony convictions older than 10 years are for simple drug possession—crimes that carry no probative value as to a witness's probity, *Smith*, 181 F. Supp. 2d at 909, but which carry obvious risks of prejudice. Three of Witness 3's felony convictions older than 10 years are for drug distribution. To the extent that these convictions carry any probative value as to truthfulness—in the government's view, they do not—it is negligible considering that the defense will impeach Witness 3 with a 2013 conviction for counterfeiting, a crime of dishonesty, and a 2012 conviction for disorderly conduct. Under these circumstances, these dated drug distribution charges carry no additional probative weight; they would only serve to prejudice the jury against Witness 3.

Finally, the Court should exclude Witness 3's 1999 conviction for passing a forged check. Although it is a crime of dishonesty, the conviction is extremely dated—nearly 20 years old. Further, it is cumulative of the 2013 counterfeiting conviction and therefore carries diminished probative weight. *Rucker*, 738 F.3d at 883-85. It therefore does not satisfy Rule 608(b)'s balancing test.

13

D. <u>Witness 4</u>

Witness 4 was the target of an October 2017 J. Doe search warrant at issue in this case. Witness 4 will testify that the information contained in the search warrant complaint was false.

Witness 4 has the following felony convictions:

- October 2014: retail theft;
- April 2011: drug possession;
- February 2007: drug distribution and drug possession (released from custody in approximately June 2007);
- September 2001: passing a false check.

The government does not object to the admission of Witness 4's April 2011 and October 2014 felony convictions under Rule 609(a). The Court should bar admission of Witness 4's other convictions because the probative value does not substantially outweigh the risk of prejudice.

The February 2007 drug possession charge carries no probative weight as to truthfulness. *Smith*, 181 F. Supp. 2d at 909. Whatever probative weight the February 2007 drug distribution conviction may carry as to truthfulness (again, it is the government's position that it carries none), it does not "substantially outweigh" the risk of prejudice.

Here, the risk of prejudice is high. The J. Doe warrant at issue alleges that Witness 4 sold marijuana out of a residence on Chicago's west side in January 2018. Witness 4 will testify that the information in the warrant is wholly fabricated, and that Witness 4 never sold narcotics out of the residence in question (or anywhere else

14

in January 2018). The relevance of Witness 4's testimony centers on establishing the falsity of the J. Doe warrant, and the jury's determination as to the falsity will turn largely on whether they credit Witness 4's testimony that s/he was not selling drugs in October 2017. To introduce Witness 4's 2007 drug distribution conviction into this equation is to invite the jury to make a forbidden propensity inference—"once a drug dealer, always a drug dealer."

Conversely, the probative value is low. The defense will already have the opportunity to impeach Witness 4 with two felony convictions within 10 years, including a felony narcotics possession charge. That the 2007 distribution conviction carries any additional marginal probative weight is dubious. Certainly, it does not "substantially outweigh" the risk of prejudice given the circumstances.

The Court should also bar admission of Witness 4's 2001 conviction for passing a false check. Although it is a crime of dishonesty, it is simply too old to carry probative value that "substantially outweighs" the risk of prejudice. Here again, Witness 4 does not present the "rare" or "exceptional" circumstances that justify admission of such dated felony convictions.

E. Witness 5

Witness 5 was the target of an October 2017 J. Doe search warrant at issue in this case. Witness 5 will testify that the information used to obtain the warrant was false. Witness 5 will further testify that the CPD officers involved in the search seized several cartons of cigarettes from Witness 5's residence. The government will present evidence that officers did in fact seize several cartons of cigarettes but failed to

15

inventory them. The government will offer further evidence that defendant Salgado wrote a police report about the search in which he omitted the fact that the searching officers seized the cigarettes, and that defendant Elizondo approved the report. The government will offer further evidence that Elizondo and Salgado later used the stolen cigarettes to pay confidential informants.

Witness 5 has the following felony convictions:

- January 1995: drug possession;
- June 1984: drug possession;
- July 1981: second degree murder;
- October 1976: unlawful use of a weapon;
- October 1972: aggravated battery.

The Court should exclude all of these convictions. None involves a crime of dishonesty and they are extraordinarily dated.

## V.  PRECLUDE AN "I WAS JUST FOLLOWING ORDERS" DEFENSE ARGUMENT

The government anticipates that defendant Salgado may seek to argue to the jury that he engaged in criminal conduct—including knowingly presenting Cook County judges with materially false information in support of J. Doe search warrants—only because Elizondo, who was his supervisor, directed him to do so. That is not a valid defense to any of the charges in this case. *United States v. Funmaker*, 10 F.3d 1327, 1331 (7th Cir. 1993) ("It must be clear that defendants cannot circumvent federal prosecution by claiming that they were merely following

16

orders."); *United States v. North*, 910 F.2d 843, 923 (D.C. Cir. 1990). Therefore, any such argument would only risk confusing the jury, and the Court should bar it.

        Respectfully submitted,
        JOHN R. LAUSCH, JR.
        United States Attorney

By:   */s/ Sean Franzblau*
        SEAN J.B. FRANZBLAU
        ANKUR SRIVASTAVA
        Assistant United States Attorneys
        219 S. Dearborn Street
        Chicago, Illinois 60604
        (312) 353–5300